UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**B&N Coal, Inc.,**

    Plaintiff,                                   Case No. 2:16-cv-980

    v.                                          Judge Sarah D. Morrison
                                                   Magistrate Judge Kimberly A. Jolson

**Blue Racer Midstream, LLC,**

    Defendant.

## OPINION AND ORDER

This matter is before the Court on Plaintiff's (ECF No. 79) and Defendant's (ECF No. 80) cross-Motions for Summary Judgment. Each party has filed its Memorandum in Opposition (ECF Nos. 83, 84) and its Reply (ECF Nos. 88, 86). The matter is now ripe for decision.

Also before the Court are Defendant's Motion to Strike Second Affidavit of Carl Baker, Jr., (ECF No. 82) and Motion to Exclude Expert Testimony of Todd Kildow (ECF No. 81). Plaintiff has filed a Memorandum in Opposition to each of these motions (ECF Nos. 89, 85), and Defendant has filed Replies (ECF Nos. 90, 87).

**I.    BACKGROUND**

It appears from the motion papers and from oral argument that the parties are in agreement on most of the relevant facts. Those facts are treated here as undisputed, and disputed (or unclear) facts are described as such. The relevant facts are as follows.

The land at issue concerns three parcels of land in Noble County, Ohio, (collectively, the "Property") for which the mineral rights were severed from the surface rights some time ago. (ECF Nos. 79-1, at 1–2; 80-1, at 2.) At present, Plaintiff, B&N Coal, Inc., ("B&N") owns the mineral rights to the Property, while Defendant, Blue Racer Midstream, LLC, ("Blue Racer")

1

owns a portion of the surface rights—specifically, right of way easements. (ECF Nos. 79-1, at 1–2; 80-1, at 2–3.) Neither B&N nor Blue Racer disputes the other's title. (Tr. of Oral Argument, 7:21–8:12 (on file with Court).)

Consistent with its rights, in 2016, Blue Racer built a natural gas pipeline (the "Pipeline"), which crosses the Property. (ECF No. 80-1, at 3.) Meanwhile, consistent with its rights, B&N seeks to mine coal below the Property, including below the area over which the Pipeline crosses, at a mining site known as Little Buffalo. (ECF No. 79-1, at 8–12.) However, so long as the Pipeline is in place, B&N cannot mine the coal directly below, or within a protective radius of, the Pipeline. (ECF No. 79-1, at 8.)

Based on its current mining schedule, B&N does not plan to begin mining the Little Buffalo site until early 2023. (ECF No. 84, at 6.) However, due to the lengthy permitting process, a point on which both parties agree, B&N has already begun the permitting process in order to ensure it is able to begin mining in early 2023. (*Id.*; ECF No. 80-1, at 4; Tr. of Oral Argument, 8:23–9:4.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When

evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

### III. ANALYSIS

Despite not being entirely clear about the specific cause(s) of action under which it has brought suit, B&N is seeking three forms of relief—a declaratory judgment, an injunction requiring that Blue Racer remove the Pipeline from the Property, and damages. In essence, B&N claims that it has the right to force Blue Racer to remove the Pipeline to allow B&N to mine the entire Property. (ECF No. 79-1, at 3–7.) Blue Racer does not dispute this. (Tr. of Oral Argument, 24:16–23 ("[I]f they are ready to mine . . . we think that they have the right to tell us, yes, you've got to either pay us for the coal or relocate your pipeline."); ECF No. 80-1, at 6; ECF No. 86, at 2.) Rather, Blue Racer disputes that it is required to move the Pipeline *now*. (Tr. of Oral Argument, 25:12–15 ("If we were here in 2023 and they were—you know, they said, hey, we need to mine and they won't either move their pipeline or pay us for our coal, I think we would be having a different conversation.").)

### A. Declaratory Judgment

B&N seeks a declaration that Blue Racer's rights (the surface rights) "are subservient to [B&N]'s right to mine and otherwise operate for its coal reserves" on the Property. B&N has never defined what it means to "otherwise operate for its coal reserves," but based on the briefing and oral argument, the Court construes this to be the permitting process. Thus, B&N seeks a declaration that when their rights come into conflict, Blue Racer's rights are subservient to B&N's not just in the context of mining the coal, but also in the context of when B&N is getting the permit to mine.

Blue Racer does not dispute that in the limited context of when actual mining is occurring, its rights are subservient to B&N's right to mine. Blue Racer does dispute that its rights are subservient to B&N's outside of when B&N is actively mining, including during the duration of the permitting process.

#### 1. Mootness

First, B&N seeks a declaration that Blue Racer's rights are subservient to B&N's right to mine. However, the Court may only issue such a declaration if this is an issue that is actually in dispute.

Under the Declaratory Judgment Act, a federal court may, in a case where it has jurisdiction, "declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). In order for a court to have jurisdiction, "there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (per curiam) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937)).

"To get a declaratory judgment, [the plaintiff] must present a justiciable case or controversy under Article III." *Hemlock Semiconductor Corp. v. Kyocera Corp.*, 747 F. App'x 285, 292 (6th Cir. 2018). That is, the plaintiff "must demonstrate that 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). There must remain "'an actual injury traceable to the defendant [that is] likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)).

"'[A] case is moot when the issues presented are no longer 'live' . . . .'" *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "'The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties.'" *Id.* (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc)).

Here, the parties agree on at least a portion of the judgment that B&N seeks this Court to declare. B&N seeks a declaratory judgment that Blue Racer's rights are subservient to B&N's "right to mine." But Blue Racer concedes that in the context of this use of the Property, its rights are subservient to B&N's and that it will have to move the Pipeline to allow B&N to mine or to pay damages for its failure to do so. Blue Racer only disputes its need to move the Pipeline at this very moment. Because of the parties' agreement, the Court's issuance of this aspect of the requested declaratory judgment—that Blue Racer's rights are subservient to B&N's right to mine—would not make a difference to the legal interests of the parties, so there is no case or controversy. The issue is moot.

5

As a result, B&N is not entitled to summary judgment on this first component of its declaratory judgment claim, and Blue Racer is entitled to summary judgment.

**2.    Ripeness**

Second, B&N seeks a declaration that Blue Racer's rights are subservient to B&N's right to "otherwise operate for its coal reserves." B&N argues that this claim is not yet ripe.

The ripeness doctrine stands for the proposition that even if there is a live case or controversy, and thus jurisdiction under Article III, a court should determine whether judicial resolution would be desirable under the circumstances. *Adult Video Ass'n v. U.S. Dep't of Justice*, 71 F.3d 563, 567 (6th Cir. 1995).[1] "The basic rationale of the ripeness doctrine 'is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Id.* (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)).

Pursuant to this doctrine, the Court "weigh[s] several factors in deciding whether to address the issues presented for review." *Id.* at 568. Those factors are: 1) "the likelihood that the harm alleged by [the] plaintiff[] will ever come to pass"; 2) "whether the factual record of th[e] case is sufficiently developed to produce a fair and complete hearing as to the prospective claims"; and 3) "the hardship that refusing to consider plaintiff's prospective claims would

---

[1] The Court is aware that the Supreme Court has recently questioned the "continuing vitality of the prudential ripeness doctrine . . . ." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) ("To the extent respondents would have us deem petitioners' claims nonjusticiable 'on grounds that are "prudential," rather than constitutional,' '[t]hat request is in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging.'" (alteration in original) (quoting *Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 125–26 (2014))). Because the Supreme Court has not overruled this doctrine, this Court remains duty-bound to follow it. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

impose upon the parties." *United Steelworkers of Am., Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194–95 (1988).

Blue Racer emphasizes that B&N does not plan to mine the Little Buffalo site until early 2023 and argues that, so long as the Pipeline is removed when B&N is ready to begin mining, that is sufficient. B&N responds that this is not the full story, that the relevant time period is not when B&N will begin to mine but that the Pipeline must be removed when B&N begins the permitting process for Little Buffalo. In particular, B&N insists that it cannot receive a permit to mine the entire Property so long as the Pipeline remains in place. (Tr. Of Oral Argument, 14:24–25 ("When we start mining or start permitting, we have to get the permit as the property is at that time.").) Blue Racer disputes that this is the case. (*Id.* 23:13–22.)

The mere existence of this dispute is not enough. Where B&N falls short, is that it has not provided any admissible evidence to support its assertion that the Pipeline must be removed during the permitting process, more than three years before it begins to mine.[2] At the summary judgment stage, the plaintiff must produce "evidence on which the jury could reasonably find" for its position. *Anderson*, 477 U.S. 252. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . ." *Id.* Moreover, "evidence submitted in opposition to a motion for summary judgment must be admissible." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997). It is B&N's burden to prove that the Court must decide these issues now, that the case is currently ripe, and it has failed to meet this burden.

B&N's only evidence that it cannot get a permit to mine the entire property while the Pipeline is in place are hearsay statements from the Ohio Department of Natural Resources

---

[2] B&N itself acknowledges the uncertainty around its position, conceding that it "may" be able to get its desired permit for the entire Property if the Court were to order future removal of the Pipeline. (Tr. of Oral Argument 21:20–25.) However, B&N does not know if this would be an option under applicable Ohio Department of Natural Resources rules. (*Id.*)

7

("ODNR"). Pursuant to Fed. R. Evid. 802, hearsay is, by default, inadmissible. B&N has provided no argument or evidence as to why the statements of agents of ODNR to B&N are, in fact, admissible hearsay. Nor has B&N sought to introduce a declaration from anyone from ODNR. Moreover, B&N has not pointed to a single statute, regulation, rule, or any other provision of law to support its position that it cannot seek a permit to mine the entire Property with the Pipeline in place.

Without evidence that the Pipeline must be removed prior to the time it begins the permitting process, B&N argues for a perpetual monopoly to control the surface rights on the land to which it owns only the mineral rights. (Tr. of Oral Argument, 32:14–22.) B&N has no such entitlement. *See Snyder v. Ohio Dep't Nat. Res.*, 18 N.E.3d 416, 420 (Ohio 2014) ("It is a truism that neither the owner of the surface interest nor the owner of the mineral interest has full ownership. Each has rights that are subject to the rights of the other."). B&N is only entitled to subvert Blue Racer's rights to the extent that it has an actual need to do so. B&N has not provided admissible evidence that that need yet exists.

It is the plaintiff's burden to prove that its claim is ripe. *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1064 (10th Cir. 2012); *Andrew v. Lohr*, 445 F. App'x 714, 715 (4th Cir. 2011) (per curiam); *see Dealer Comput. Servs., Inc. v. Dub Herring Ford*, 623 F.3d 348, 354 (6th Cir. 2010) (holding that plaintiff had burden of showing ripeness). It is thus B&N's burden to prove that adjudication of this dispute is not premature. Blue Racer has proven that B&N has not met this burden. Because of this "complete failure of proof concerning an essential element of" B&N's case, this failure to prove ripeness "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Accordingly, B&N is not entitled to summary judgment on the second component of its declaratory judgment claim, that Blue Racer's rights are subservient to B&N's right to "otherwise operate for its coal reserves." In addition, because of B&N's failure to meet its burden to prove ripeness, Blue Racer is entitled to summary judgment on this issue.

Because the first portion of B&N's claim for a declaratory judgment is moot and the second portion of its declaratory judgment claim is not yet ripe, B&N's motion for summary judgment as to Count One is **DENIED**. For the same reasons, Blue Racer's motion for summary judgment as to Count One is **GRANTED**.

### B. Injunction

The standards for a preliminary and a permanent injunction are virtually identical. *Am. Civil Liberties Union of Ky. v. McCreary Cty.*, 607 F.3d 439, 445 (6th Cir. 2010) (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)). Accordingly, the plaintiff must demonstrate 1) irreparable harm, 2) that there is no adequate remedy at law, 3) that the balance of hardships between the plaintiff and defendant favors an injunction, and 4) that an injunction would not go against the public interest. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

As to the first two factors, B&N has effectively conceded that it would not suffer irreparable harm without the injunction and that it has an adequate remedy at law. B&N has gone to great lengths to calculate a remarkably precise (albeit somewhat suspect) damages calculation. (ECF No. 79-2.) The very fact that B&N is able to calculate what its added costs and lost profits might be should the Pipeline remain in place—even four years out from breaking ground on the mining site—proves that B&N has an adequate remedy at law.

Moreover, although B&N repeatedly emphasizes its need to mine Little Buffalo in order to fulfill its contracts, B&N has presented no evidence that mining Little Buffalo is a *necessity* rather than an *expectation*. That is, Little Buffalo will not be the last site that B&N ever mines, and B&N provides no reason why it cannot now, with over three years of lag time, apply for a permit to mine another site in place of Little Buffalo. Some of B&N's damages calculations confirm as much. (*See* ECF No. 79-2 ¶ 6 (factoring in costs to obtain another permit for another site to replace the coal lost to the pipeline), ¶ 12 (factoring in cost of replacing the lost coal).) Since B&N itself considers this damages calculation to be an adequate remedy, the Court will take B&N at its word.

As for the remaining factors, they appear to be in equipoise. With regard to the third factor, the Court does not doubt that B&N would suffer a severe hardship should the Pipeline remain in place, since B&N would have to incur the added costs of mining Little Buffalo as two separate mining sites, as well as the costs of looking for and acquiring a new coal site sooner than anticipated. But Blue Racer is not immune from harm in these circumstances either. For one, Blue Racer would incur significant costs in having to move the Pipeline. For another, Blue Racer and its customers would be harmed by the time lag caused by shutting down and relocating the Pipeline. While Blue Racer acknowledges that it will have to incur these costs at some point in time, these costs will increase if Blue Racer must move the Pipeline sooner and keep it off of the Property for a longer period of time than necessary. (*See* ECF No. 80-1, at 16.)

Finally, with regard to the public interest, B&N points out that Ohio considers coal to be "one of the state's best, most abundant energy resources." (ECF No. 79-1, at 18 (quoting Ohio Rev. Code Ann. § 1551.31(A) (West 2019)).) Meanwhile, Blue Racer points out that Ohio public policy encourages oil and gas production. (ECF No. 83, at 19 (citing *Bohlen v. Anadarko E & P*

*Onshore, LLC*, 26 N.E.3d 1176, 1181-82 (Ohio Ct. App. 2014).) The public also has an interest in using the Property to its maximum benefit. *Cf. Rite Aid of Ohio, Inc. v. Wash. Cty. Bd. of Revision*, 54 N.E.3d 1177, 1183 (Ohio 2016) (noting that property value is assessed in part based on the "highest and best use" of the property, meaning the "use which will generate the highest net return to the property over a reasonable period of time." (internal quotation marks omitted))

At argument, B&N argued that the federal standards for injunctive relief were inapplicable to this case, arguing that the Ohio Marketable Title Act provides injunctive relief. (Tr. of Oral Argument, 19:3–18.) However, the provision cited by B&N, O.R.C. § 5301.53(E) says nothing about injunctive relief, and B&N has provided no case or provision of this statute to supports its assertion that this statute provides for an injunctive remedy.

Because none of the four factors required for injunctive relief favors B&N, an injunction is not appropriate as a matter of law, and Blue Racer is entitled to summary judgment on this issue.

### C. Damages

As stated above, B&N has not been entirely clear about the cause of action underlying its Complaint. This Court previously construed the "Damages" count to constitute further allegations in support of the claim for injunctive relief, rather than a separate claim. (ECF No. 41, at 12.) In addition, B&N would not be entitled to damages on its claim for declaratory relief even if it were successful on that claim. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (" '[T]he operation of the Declaratory Judgment Act is procedural only.' " (alteration in original) (quoting *Aetna Life Ins.*, 300 U.S. at 240)). As a result, B&N could only be entitled to damages in conjunction with Count One, if at all.

Even assuming, *arguendo*, that B&N has stated a claim for which it can receive damages, it is not entitled to damages here. First, B&N has offered an affidavit, by its president and CEO, Carl Baker, Jr., with a detailed damages calculation in support of its request for $10,010,088 in damages. (ECF No. 79-2.) Blue Racer disputes B&N's claim for damages, arguing that it is speculative. (ECF No. 80-1, at 17-19.)[3] "It is elementary that evidence of damage which is remote or speculative may not be used to prove a loss. Rather, a plaintiff must present facts from which the loss may be reasonably calculated." *Cincinnati Fluid Power, Inc. v. Rexnord, Inc.*, 797 F.2d 1386, 1394 (6th Cir. 1986). B&N has not met this bar.

Moreover, it would be eminently unfair to order Blue Racer to pay money now for damages that have not been incurred and may never be. Even assuming B&N will incur damages, the company would not incur such damages for several years. The only evidence that B&N has put forth as to why damages are warranted now is evidence related to its future need for the coal it seeks to mine. But B&N cannot rely on its future rights to establish the requisite evidence for its present remedies.

Thus, even though there remains a genuine issue of fact as to whether the Pipeline is an impediment to Blue Racer's ability to get its desired permit, this genuine issue is not material because the damages issue is not yet ripe. Accordingly, Blue Racer is entitled to summary judgment on this issue as well.

---

[3] Blue Racer has also moved to strike Mr. Baker's affidavit, arguing that its substance was not disclosed in discovery and that it contradicts Mr. Baker's deposition. (ECF No. 82-1.) The Court need not resolve the dispute regarding this affidavit, or the motion to strike, because the Court agrees with Blue Racer that B&N's damages calculation is not sufficiently calculable at this time.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendant's Motion for Summary Judgment is **GRANTED**.

Because the Court grants Defendant's Motion for Summary Judgment, Defendant's Motion to Strike Carl Baker's Second Affidavit is **DENIED** as moot.

Because the Court has determined that summary judgment is warranted as to all remaining issues, Defendant's Motion to Exclude Expert Testimony of Todd Kildow is **DENIED** as moot.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**